IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01331-CMA-KMT

PERCY BARRON,

    Plaintiff,

v.

STEVEN NAFZIGER,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

    This case involves a claim that Defendants violated Plaintiff's Eighth Amendment rights. This matter is before the court on "Plaintiff's Motion of Dispositive" (Doc. No. 89) and "Defendant's Motion for Summary Judgment" (Doc. No. 90). Jurisdiction is premised upon 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

### STATEMENT OF THE CASE

    The following facts are taken from Plaintiff's Amended Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff is incarcerated in the United States Penitentiary - Administrative Maximum in Florence, Colorado ("ADX"). (Am. Prisoner Compl. at 2 [hereinafter "Compl."] [filed September 26, 2007].) Plaintiff has named Steven

Nafziger, the clinical director at ADX, as the defendant. (*Id.* at 1–2.) Plaintiff has asserted one claim for "deliberate indifference." (*Id.* at 4.) Plaintiff had corneal transplant surgery on his left eye in July 2002 at the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP"). (Def.'s Mot. Summ. J., Ex. C at 5–6. ) The surgery was performed by Dr. W. Patrick Collins. (*Id.*) According to Plaintiff's medical records, sixteen sutures were placed in Plaintiff's left eye during the surgery. (*Id.* at 6.) Plaintiff remained at the MCFP until November 2002, at which time it was noted by Dr. Collins that Plaintiff "wants a transfer and absolutely refuses to follow medical advice." (*Id.* at 4.) In a Transfer Summary, Dr. Francis M. Corry, Chief of Surgery at MCFP, also noted the plaintiff "refused to properly allow treatment of his eye on multiple occasions. The sutures are still in place at this time. The ophthalmologist has suggested the patient be seen on a monthly basis for removal of the sutures in sequence." (*Id.* at 2.) Dr. Corry also noted that the patient was "to see local ophthalmologist for follow-up of the corneal transplant. He is to return to Springfield on a monthly basis if possible to see Dr. Collins, Ophthalmologist for evaluation of removal of corneal sutures, and if that is not possible a local Ophthalmologist can follow-up for similar removal of sutures." (*Id.* at 2–3.) Plaintiff signed a Medical Treatment Refusal form on November 16, 2002, in which he acknowledges he did not wish to see the ophthalmologist at MCFP. (*Id.* at 7.)

According to the medical records, on April 16, 2003, Steven Clough, an optometrist, removed two "moderately exposed" sutures. Dr. Clough noted that a copy of his consultation note would be sent to Dr. Collins. (*Id.* at 10.) On March 24, 2004, Plaintiff was seen again by Dr. Collins at MCFP. (*Id.* at 11.) The medical record for that date notes Plaintiff wanted his

2

sutures removed because his eye is irritated. (*Id.*) Dr. Collins noted that the "sutures" were actually three subepithelial fragments left in Plaintiff's eye. (*Id.*) On March 30, 2004, Dr. Leyba, the clinical director at ADX, spoke on the telephone with Dr. Collins. (*Id.* at 12.) Dr. Collins reported to Dr. Leyba that he did not need to see Mr. Barron again. (*Id.*)

Plaintiff states in January 2006 a "contract optometry at U.S. Penitentiary - Max, Florence, Colorado" noted in Plaintiff's medical record that he highly recommended that the three sutures be removed from around Plaintiff's cornea to improve his vision. (*Id.* at 3.) Defendant has not attached a medical record for January 2006. However, in a referral request form completed by Dr. Leyba on May 31, 2006, it is noted that:

> The recommendation by the contract optometrist on 3/21/06 is that the three remaining and embedded sutures be surgically removed due to the fact that these sutures are causing a corneal tension and are not allowing the cornea to lay flat and consequently are causing a severe corneal surface abnormality that is not correctable with current day contact lenses or eye glasses.

(*Id.*, Ex. E at 3.) Dr. Leyba recommended that Plaintiff be seen by Dr. Collins in Springfield for removal of the three remaining, embedded sutures. (*Id.*) Pursuant to this request, Plaintiff was admitted to MCFP on July 17, 2006. (*Id.*, Ex. C at 29.) He was seen by Dr. Collins on August 8, 2006. (*See id.* at 30–31.) After the examination, Dr. Collins noted that the "subepithelial suture fragments do not need to be removed." (*Id.* at 31.) (Emphasis in original.) Dr. Collins also noted, "May transfer back to parent institution, s/p corneal transplant - Graft clear - excellent results. Do Not remove subepithelial suture fragments." (*Id.* at 30.) (Emphasis in original.) In the Transfer Summary for Plaintiff's return to ADX, it was noted that Plaintiff "was instructed on no indication for removal of sutures." (*Id.* at 24.)

3

Plaintiff states on August 31, 2006, he sent a request to the defendant to see a different ophthalmologist for evaluation of his left eye condition and removal of the three sutures. (Compl. at 3.) Plaintiff contends that Defendant, on September 1, 2006, denied his request. (*Id.* at 4.) Plaintiff's medical records show that following Plaintiff's return to ADX, he continued to be seen by Dr. Clough, who noted on two occasions that the three remaining sutures should not be removed. On December 5, 2007, Dr. Clough wrote that "all (3) subepithelial sutures are embedded w/ absolutely no exposure or 2° foreign body sensation." (Def.'s Mot. Summ. J., Ex. C at 28.) Dr. Clough "explained to patient that no exposed sutures are present to cause pain nor does corneal toricity (astigmatism) cause any pain" and "informed patient of potential risk of trying to remove embedded sutures with diagnosis of graft rejection." (*Id.*) On May 1, 2007, Dr. Clough observed "(3) embedded sutures posing no risk of graft failure or foreign body sensation." (*Id.* at 26.) Defendant Dr. Nafziger reviewed each of these records and signed them. (*Id.* at 26 , 28.) Defendant Nafziger also personally examined Plaintiff on June 25, 2007, at which time he noted that Plaintiff "denies problems, denies issues [with] his L eye retained sutures" and that no further surgery had been recommended by the ophthalmologist. (*Id.* at 19.) In addition, on July 3, 2008, a review of Plaintiff's chart was performed by another ophthalmologist, C. Howard, M.D., at FMC Devens, who noted Plaintiff's remaining "stitches should be considered permanent and not removed." (*Id.* at 33.)

Plaintiff asserts the three sutures are causing him pain in his left eye and that Defendant's "deliberate indifference to [his] serious medical needs" violated his Eighth Amendment rights.

(Compl. at 5.)  Plaintiff seeks injunctive relief, compensatory damages, and punitive damages. (*Id.* at 7.)

## PROCEDURAL HISTORY

Plaintiff filed his Amended Prisoner Complaint on September 26, 2007. (Compl.) Plaintiff filed a "motion of dispositive," which the court construed as a motion for summary judgment, on September 26, 2008. (Pl.'s Mot. of Dispositive [hereinafter "Pl.'s Mot. Summ. J.].) Defendant filed a motion for summary judgment which the court also construed as a response to Plaintiff's motion for summary judgment. (Def.'s Mot. Summ. J [filed October 1, 2008].) Defendant filed an additional response to Plaintiff's motion on February 10, 2009. (Def.'s Resp. to Pl.'s Mot. for Summ. J. [hereinafter "Resp. to Pl.'s Mot. Summ. J."].) Plaintiff did not file a reply.

Defendant filed his motion for summary judgment on October 1, 2008 (Def.'s Mot. Summ. J.) and a supplement to the motion for summary judgment on October 30, 2008 (hereinafter "Supplement to Def.'s Mot. Summ. J."). Plaintiff did not file a response. These motions are ripe for review and recommendation.

## STANDARD OF REVIEW

*1.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## 2. *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

*1.    Eighth Amendment Claim*

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). A claim based on "an inadvertent failure to provide adequate medical care" or alleging "that a physician has been negligent in diagnosing or treating a medical condition" does not state a valid claim of medical mistreatment under the Eighth Amendment. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (overruled on other grounds) (citations omitted). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

7

*Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106). The test for deliberate indifference involves both an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (2000).

### A.     *Objective Component*

The first prong of the deliberate indifference test requires that the alleged deprivation of the inmate's constitutional right be "sufficiently serious" — one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). In this case, although Dr. Leyba referred Plaintiff to Dr. Collins for removal of the sutures based on the March 31, 2006 recommendation of the contract optometrist[1] (*see* Def.'s Mot. Summ. J., Ex. E at 3), Dr. Collins, the ophthalmologist surgeon who performed Plaintiff's eye surgery, disagreed with this recommendation and specifically stated the sutures should not be removed. (*See id.*, Ex. C at 30–31.) Thereafter, Dr. Clough reiterated Dr. Collins' medical advice. (*See id*. at 26, 28.) Defendant Dr. Nafziger also saw Plaintiff and agreed with Dr. Collins' assessment (*see id.* at 19) and Dr. Howard, a reviewing ophthalmologist, also agreed that the sutures should be considered permanent (*see id.* at 33).

---

[1]Ophthalmologists have a medical degree (M.D.) and undergo a minimum of four years of post-graduate training. Three or more of these years are spent in specialized training in ophthalmology degree — a discipline of caring for the eyes and the visual system based on medical principles. Optometrists complete a four-year post-graduate degree program to earn their doctor of optometry (O.D.) title. This program includes classroom and clinical training.

Plaintiff broadly concludes Defendant's "deliberate indifference to [his] serious medical needs" violated his Eighth Amendment rights.  (*See* Compl. at 4–6.)  However, Plaintiff has failed to state any facts supporting these conclusions.  The affidavits and medical records attached to Defendant's motion for summary judgment contradict Plaintiff's broad conclusions.  Plaintiff has failed to demonstrate a medical need that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Oxendine*, 241 F.3d at 1276.  Accordingly, Plaintiff fails to satisfy the objective component of the deliberate indifference test.

### B. *Subjective Component*

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety."  *Sealock*, 218 F.3d at 1209.  A prison medical professional who "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if that person delays or refuses to fulfill that gatekeeper role.  *Id.* at 1211.  "Deliberate indifference" does not require a showing of express intent to harm.  *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).  Rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm.  *Id.*  To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1970).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

Plaintiff states that Defendant "knew that the three sutures is [sic] causing pain in [his] left eye," but fails to allege any facts that show Defendant had a "sufficiently culpable state of mind" in failing to remove the sutures or allow Plaintiff to be seen by another ophthalmologist. *Farmer*, 511 U.S. at 834. Moreover, based on a review of Plaintiff's medical records, there is no indication that the remaining sutures pose any risk to his health or safety. *Sealock*, 218 F.3d at 1209. Because there is no indication there existed any risk to his health or safety, Defendant could not have known of and consciously disregarded an excessive risk to Plaintiff's health or safety when he denied Plaintiff's request to be seen by another ophthalmologist or to have his sutures removed. Plaintiff's conclusory allegations fall far short of providing facts necessary to show the requisite culpability to state a claim for a violation of the Eighth Amendment based on deliberate indifference to medical needs.

Plaintiff's mere assertion that Defendant Nafziger has refused Plaintiff's request to see a different ophthalmologist for evaluation of his left eye condition and removal of the three sutures does not indicate the egregious indifference contemplated by *Estelle*. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (prisoner's personal opinion regarding his condition or his self-diagnosis is insufficient to establish an Eighth Amendment violation). Furthermore, an inmate is only entitled to receive a medical examination; he is not entitled to a diagnosis he likes. *Estelle*, 429 U.S. at 104–06; *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who <u>merely disagrees</u> with a diagnosis or a prescribed course of treatment does not state a constitutional violation.")(emphasis added); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("The

prisoner's right is to medical care — not to the type or scope of medical care which he personally desires.") "A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger, id.* (emphasis added).

Accordingly, as Plaintiff has failed to establish either element of deliberate indifference to any serious medical need, he has failed to establish that Defendant violated his constitutional right to be free from cruel and unusual punishment pursuant to the Eighth Amendment, and Defendant is entitled to summary judgment.

Plaintiff's "Motion of Dispositive," which this court construed as Plaintiff's motion for summary judgment, is a recitation of certain "fact evidence information" Plaintiff claims to have. (Pl.'s Mot. Summ. J.) Some of Plaintiff's fact recitations duplicate information set forth in Defendant's Motion for Summary Judgment. Other portions repeat information contained in Defendant's Rule 26 Disclosures or Defendant's responses to discovery requests. (*Id.*) The factual recitations set forth in Plaintiff's motion do not add to or change the analysis of Plaintiff's Eighth Amendment claim. Accordingly, Plaintiff's "Motion of Dispositive," construed as Plaintiff's motion for summary judgment, is properly denied.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

1. "Plaintiff's Motion of Dispositive" (Doc. No. 89) be DENIED; and

2. "Defendant's Motion for Summary Judgment" (Doc. No. 90) be GRANTED, and that this case be dismissed in its entirety.

11

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of March, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge